# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3052WA

_____

Charles Wylie,                                              *
                                                           * On Appeal from the United
       Appellant,                                   * States District Court
                                                           * for the Western District
   v.                                                  * of Arkansas.
                                                           *
MacMillan Bloedel Packaging, Inc.                          * [Not To Be Published]
                                                           *
       Appellee.                                    *

_____

Submitted: July 20, 2000
Filed: August 1, 2000

_____

Before RICHARD S. ARNOLD, HANSEN, and BYE, Circuit Judges.

_____

PER CURIAM.

Charles Wylie appeals the District Court's[1] grant of summary judgment to his employer, MacMillan Bloedel Packaging, Inc. (MacMillan), in his declaratory action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461. The dispute involves the number of years' employment for which Wylie should be credited under MacMillan's retirement plan. We affirm.

_____

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

For twenty years, Plaintiff worked as a salesman for Arkansas Container Corporation (ACC). MacMillan purchased ACC in 1988. At that time, he began to work for MacMillan as a salesman, although he retained April 1968 as his hire date for purposes of seniority. He was orally assured by certain MacMillan employees that he would receive full credit under MacMillan's ERISA pension and retirement plans (the "Plan") for his twenty years with ACC, but his benefits statements reflected a disproportionately low benefit amount. He eventually sought written assurance that he would receive the credit and commenced this lawsuit after he received written notice in 1994 that "no provision for awarding past service pension credits to ACC employees" had been made when MacMillan acquired ACC, and that Wylie's "seniority date" of 1968 did not reflect "Credited Service" for purposes of the Plan.

The relevant Plan provisions are Sections 2.15 ("Credited Service") and 2.34 ("Vested Service"), which provide, in pertinent part:

> 2.15 **"Credited Service"** means the period of an Employee's service used to determine the amount of benefits which will be provided under the terms of the Plan. Subject to the following rules, all years of an Employee's Vesting Service, as determined under the rules of Section 2.34 after such Employee has begun participation in the Plan shall be included in his Credited Service.
>
> . . . .
>
> (b) Credited Service shall include the periods of an Employee's continuous service while he was a contributing Participant in any Prior Plan.
>
> (c) Credited Service shall not include any of the following periods of an Employee's service:

(i) any period of service with a Company before such Company adopts the Plan, or after such Company ceases participation in the Plan[] . . . .

2.34 **"Vesting Service"** means the period of an Employee's service used to determine his entitlement to benefits under the Plan and shall include all periods of an Employee's service with the Company or with a Controlled Entity not disregarded under the following rules . . . .

Plaintiff sought a declaration that MacMillan was estopped from denying him credit for his ACC service, and that he was entitled to full credit for his years with both ACC and MacMillan. The District Court granted summary judgment in favor of MacMillan, refusing to apply estoppel principles after finding that the Plan clearly and unambiguously provided that the "years *after* an employee begins 'participation in the Plan' [were] used to calculate retirement benefits" (emphasis in original).

On appeal, plaintiff contends that the District Court erred in determining as a matter of law that the Plan was unambiguous. In particular, he contends that "Credited Service" does not unambiguously exclude his period of ACC service.

Assuming, without deciding, that equitable estoppel is a basis upon which to pursue an ERISA claim, see Jensen v. Sipco, 38 F.3d 945, 953 (8th Cir. 1994) (recognizing that most courts have held ERISA precludes oral amendments to pension plans, but leaving open question whether equitable estoppel will ever give rise to an ERISA claim), cert. denied, 514 U.S. 1050 (1995), equitable estoppel will not lie unless the relevant plan provisions are ambiguous. See Slice v. Sons of Norway, 34 F.3d 630, 633-34 (8th Cir. 1994); cf. Jensen, 38 F.3d at 950 (where defendant sought to avoid application of equitable estoppel, initial question was "whether . . . provisions [at issue where] so unambiguous as to make unnecessary any reference to other Plan provisions and extrinsic evidence"). After de novo review, see Union Pacific R.R. Co. v. Beckham, 138 F.3d 325, 329 (8th Cir.), cert. denied, 525 U.S. 817 (1998), we agree

with the District Court that the Plan unambiguously includes in Credited Service only the years after an employee begins participating in the Plan and, accordingly limits "Vesting Service" to those "periods of an Employee's service with the Company or with a Controlled Entity."[2]

Plaintiff additionally argues that the benefits statements he received in the first few years of his MacMillan service created an ambiguity, because the statements recognized his hire date as April 1968 and referred to undefined "pensionable service." This argument also fails because plaintiff is attempting to introduce ambiguity into the relevant Plan provisions through use of an extrinsic document. See Jensen, 38 F.3d at 949-50 (question of what "other evidence" is admissible turns on relative ambiguity of provision being construed; extrinsic evidence is admitted to assist court in determining meaning and effect of particular clause only when intent or meaning cannot be determined by reference to provision itself). Furthermore, the statements contain a facial disclaimer that defers to the Plan documents.

Accordingly, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2]Neither party suggests that ACC was ever a MacMillan "Controlled Entity."

-4-